[Cite as *State v. Sharifi*, 2024-Ohio-1144.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

      Plaintiff-Appellee,            :

                                   No. 23AP-217

v.                                      :      (C.P.C. No. 18CR-1817)

Samuel D. Sharifi,                      :      (REGULAR CALENDAR)

      Defendant-Appellant.           :

---

D E C I S I O N

Rendered on March 26, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Samuel D. Sharifi*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Samuel D. Sharifi, acting pro se, appeals a judgment entered by the Franklin County Court of Common Pleas denying his motion to withdraw his guilty plea. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On April 17, 2018, plaintiff-appellee, State of Ohio, indicted appellant on two counts of aggravated vehicular homicide in violation of R.C. 2903.06, one a second-degree felony and one a third-degree felony, and two counts of operating a vehicle under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19, both first-degree misdemeanors. The charges arose from the death of the victim on March 17, 2018.

{¶ 3}   A jury trial commenced on June 7, 2021.  After providing brief preliminary instructions to the jury, the trial court ordered a lunch recess.  During the break, the trial court, the prosecutor, and appellant's two defense attorneys discussed the parties' prior plea negotiations.  Defense counsel represented that appellant had been apprised of the state's two pending plea offers and had indicated his intention to proceed with trial.  The trial court detailed both plea offers on the record.  Under the first, appellant would plead guilty to the second-degree felony count of aggravated vehicular homicide charged in the indictment with no joint sentencing recommendation.  Under the second, appellant would plead guilty to the second-degree felony count of aggravated vehicular homicide charged in the indictment with a jointly recommended sentence of five years imprisonment.  The trial court asked appellant if he understood both plea offers and intended to proceed with the jury trial.  Appellant answered both questions in the affirmative.  Immediately thereafter, defense counsel indicated that he had "an idea" and requested a brief recess to confer with appellant.  (June 7, 2021 Tr. at 10.)

{¶ 4}   When the proceedings resumed, the prosecutor advised the trial court that appellant intended to withdraw his previously entered not guilty plea and plead guilty to the second-degree felony count of aggravated vehicular homicide as charged in the indictment with no joint recommendation as to sentencing.  The prosecutor submitted appellant's signed guilty plea form and recommended the court accept appellant's guilty plea and enter a nolle prosequi to the remaining counts in the indictment.

{¶ 5}   The trial court then addressed appellant personally.  After ascertaining appellant's competency, the trial court engaged appellant in a colloquy regarding the representation provided by his defense counsel.  In response to the trial court's queries, appellant indicated he had discussed with his counsel the charges filed against him, his counsel had answered his questions to his satisfaction, and he was satisfied with his counsel's representation.  The trial court then asked, and appellant agreed, that he read the guilty plea form he had signed, reviewed it with his counsel and had his questions answered, and understood and agreed to what the form stated.  The plea form, dated June 7, 2021, indicates that appellant, represented by counsel, agreed to withdraw his previously entered not guilty plea and instead enter a guilty plea to the offense indicated above.  The plea form reflects appellant's understanding of the maximum prison term for his offense, i.e., eight

years, that any prison sentence imposed would be mandatory and that the prosecution and defense did not jointly recommend a sentence.  The signed plea form further states:

> I understand that the Court upon acceptance of my plea(s) of "Guilty" may proceed with judgment and sentence. I hereby assert that no person has threatened me, promised me leniency, or in any other way coerced or induced me to plead "Guilty" as indicated above; my decision to plead "Guilty," thereby placing myself completely and without reservation of any kind upon the mercy of the Court with respect to punishment, represents the free and voluntary exercise of my own will and best judgment. I am completely satisfied with the legal representation and advice I have received from my counsel.

(Entry of Guilty Plea at 3.)

{¶ 6}    The trial court then explained the maximum penalties that could be imposed for a second-degree felony—eight years in prison and a fine of up to $15,000—and that any prison sentence imposed would be mandatory and could not be reduced for any reason. The trial court further explained that appellant would be subject to suspension of his driver's license for a minimum of three years up to a lifetime suspension.  Appellant indicated he understood the potential penalties.

{¶ 7}    Thereafter, pursuant to Crim.R. 11(C)(2), the trial court outlined the constitutional rights appellant was waiving by entering a guilty plea, i.e., the right to trial by jury at which the prosecution would be required to prove his guilt beyond a reasonable doubt, the right to confront witnesses against him, the right to compulsory subpoena process, the right against self-incrimination, and the right to appeal a guilty verdict. Appellant indicated he understood the constitutional rights as explained to him and wished to waive them.  The trial court then asked defense counsel if he was satisfied with appellant's decision to waive his constitutional trial rights.  Defense counsel responded, "I believe [appellant] is doing it knowingly and voluntarily, yes, sir."  (June 7, 2021 Tr. at 20.) The trial court then inquired: "With a full appreciation of the potential consequences of his plea?"  (June 7, 2021 Tr. at 20.)  Defense counsel responded, "I believe that to be true, sir." (June 7, 2021 Tr. at 20.)

{¶ 8}    The prosecutor then provided the following statement of facts on the record:

> [PROSECUTOR]: Judge, this is an incident that occurred in the early morning hours of March 17th, 2018. It appears

[appellant] was out with some friends and at the end of the evening was driving home from the campus area with himself and Mr. Lowe and two females in the vehicle. He left the area of Raising Cane's, I believe he was in a parking garage nearby, and drove to Indianola and 14th where he dropped the girls off, and then he and Mr. Lowe continued on.

They went to 15th Avenue * * * and traveling eastbound on 15th - - 15th is a one-way westbound road on campus and has the fraternities and sororities on it. [Appellant] accelerated the vehicle to speeds of about 55 miles an hour.

When entering the intersection of East 15th and Summit Road, at that time, [the victim] was operating a vehicle southbound on Summit, and he was entering that intersection. [Appellant's] vehicle hit [the victim's] vehicle passenger side door at speeds of 55, 57 miles an hour. Due to the impact and the injuries received by [the victim], he passed away that night * * *. [Appellant] and his passenger were able to get out of their vehicle after it traveled quite some distance and flipped over.

Police arrived. Medics arrived. The officers noticed an odor of alcoholic beverage around [appellant]. They began to question him about that, eventually asking him to perform field sobriety tests.

As a result of their investigation that evening, looking at the totality of the circumstances, they did place him under arrest for OVI. They obtained a search warrant to obtain blood from his system. That blood was obtained and sent off to the crime lab. It did result in .094 blood alcohol content. It also had cocaine, cocaine metabolite and marijuana metabolite in his system.

(June 7, 2021 Tr. at 20-22.)

{¶ 9} Appellant affirmed he understood and accepted the statement of facts provided by the prosecutor without additions or exceptions. Thereafter, appellant entered a guilty plea to the second-degree felony count of aggravated vehicular homicide as charged in the indictment and indicated that such plea was entered freely and voluntarily. After determining that appellant's plea was entered knowingly, voluntarily, and intelligently, the trial court accepted the plea, found appellant guilty, ordered a presentence investigation, and set sentencing for August 17, 2021.

{¶ 10} On August 11, 2021, defense counsel filed a sentencing memorandum on appellant's behalf. In that memorandum, counsel identified the applicable sentencing range of two to eight years and urged the court to impose a sentence at the lower end of that range.

{¶ 11} At the August 17, 2021 sentencing hearing, defense counsel averred that despite counsel's legal advice that there was a strong likelihood of success at trial on the second-degree felony aggravated vehicular homicide count, appellant decided to plead guilty because he wanted to demonstrate he was taking responsibility for his conduct and did not want to put the victim's family through a trial. Appellant expressed remorse for his actions and sympathy for the victim's family. Family members of both the victim and appellant addressed the court. Thereafter, the trial court stated it had reviewed and considered the facts of the case, the presentence investigation report, appellant's sentencing memorandum, evidence submitted at a hearing on appellant's motion to suppress, letters submitted on behalf of both the victim and appellant, and the law applicable to felony sentencing. The trial court imposed a mandatory 7-year term of imprisonment, a $5,000 fine (which was deferred), and a 15-year driver's license suspension. The court memorialized appellant's conviction and sentence in a judgment entry issued August 30, 2021.

{¶ 12} Appellant, represented by new counsel, filed a timely notice of appeal; however, on January 18, 2022, he filed a notice of intention to voluntarily dismiss the appeal. This court granted the motion and dismissed the appeal by journal entry. *State v. Sharifi*, 10th Dist. No. 21AP-458 (Jan. 20, 2022) (Journal Entry of Dismissal).

{¶ 13} On March 31, 2022, appellant filed a counseled motion to withdraw his guilty plea pursuant to Crim.R. 32.1. In the motion, appellant argued that one of his trial attorneys erroneously informed him that if he did not accept the state's plea offer, he likely would be found guilty at trial and could be sentenced to a maximum period of 13 years in prison. Appellant maintained that even if he was found guilty on all four indicted charges, his aggregate sentence, after merger, would be no more than 8.5 years; thus, a 13-year sentence was legally impossible. Appellant asserted that due to the "pressure" exerted by his trial attorney, he "made the last-minute decision to ultimately forego his trial rights and plead guilty with no joint sentencing recommendation." (Mot. at 2.) Appellant argued that

his guilty plea should be set aside because he "did not enter his plea knowingly, intelligently and voluntarily" due to ineffective assistance of counsel. (Mot. at 3.) Appellant further asserted that any perceived delay in filing his motion to withdraw his guilty plea could be attributed to his current counsel's efforts to adequately research appellate avenues, interview various parties, confer with appellant (who was imprisoned and thus not readily accessible) and determine whether filing such a motion was warranted. Appellant requested the trial court hold an evidentiary hearing on his motion.

{¶ 14} Appellant attached to his motion his own affidavit and those of his mother, Julie Beshara, and his father, Nick Sharifi. In his affidavit, appellant attested he planned to go to trial on June 7, 2021; however, during a conversation held outside the courtroom prior to the presentation of evidence, one of his trial attorneys informed him that if the jury found him guilty, he could be sentenced to 13 years in prison. Appellant averred that "[b]ecause of this information, and because [one of my trial attorneys] repeatedly assured me my sentence would be much worse after inevitably losing at trial than it would be if I accepted a plea agreement, I chose to accept a plea offer and forego my right to a trial." (Mot. to Withdraw, Ex. A, Aff. of Samuel Sharifi, at ¶ 3.) In their affidavits, his parents corroborated appellant's attestations, stating they were present at appellant's court appearance on June 7, 2021 and personally witnessed a conversation that occurred outside the courtroom during which one of appellant's trial attorneys warned appellant that he could be sentenced to 13 years imprisonment upon a guilty verdict at trial. Appellant also attached the transcript of the June 7, 2021 plea hearing to his motion to withdraw his guilty plea.

{¶ 15} The state filed a memorandum contra on April 27, 2022 arguing appellant's claims regarding the voluntariness of his plea and ineffective assistance of counsel were without merit. The state noted appellant had not submitted affidavits from either of his trial attorneys and that the affidavits submitted by appellant and his parents were self-serving and lacked credibility. The state further noted that at the plea hearing, appellant affirmed he had the opportunity to review the plea form with his trial attorneys and he was not promised anything in exchange for entering a plea. Lastly, the state noted appellant was advised both in the plea form and at the plea hearing that the maximum prison sentence for the offense to which he pled guilty was eight years.

{¶ 16} Appellant filed a reply on May 4, 2022, reiterating that his trial counsel's attempt to dissuade him from proceeding to trial based on the erroneous assertion that he could receive a 13-year prison sentence if he was found guilty at trial constitutes ineffective assistance of counsel.

{¶ 17} On December 12, 2022, the same trial court judge who accepted appellant's guilty plea held a hearing on appellant's motion to withdraw his guilty plea. At that hearing, held via video teleconference, counsel for appellant reiterated the arguments set forth in the motion, noting appellant and his parents had submitted affidavits attesting that appellant had been erroneously advised by his trial counsel that if the jury found him guilty, he would be sentenced to prison for 13 years. Counsel maintained that appellant "being essentially scared in to [sic] accepting a plea offer by being told that he would get a much higher sentence than what was even possible" abrogated the knowing, voluntary, and intelligent nature of his plea. (Dec. 12, 2022 Tr. at 5.)

{¶ 18} Following counsel's remarks, appellant testified on direct examination that although he remembered signing the guilty plea form, he did not recall reading the form or going over it with his trial counsel. He specifically testified he did not recall reading the portion of the guilty plea form indicating his understating that the maximum prison term for the offense to which he was pleading guilty was eight years and he was never informed by his defense counsel that his maximum sentence would be eight years. Appellant also averred that although he was aware that one of his trial attorneys filed a sentencing memorandum on his behalf, he did not read it and thus did not know that it indicated his maximum sentence would be eight years. The prosecutor subsequently moved to admit appellant's June 7, 2021 signed guilty plea form, the August 11, 2021 sentencing memorandum, and the August 30, 2021 sentencing entry.

{¶ 19} Prior to cross-examining appellant, defense counsel asserted that appellant's affidavit attached to his motion to withdraw his guilty plea provided the trial court with an adequate explanation of his position. Counsel clarified that the issue before the court was not whether appellant was aware of the maximum possible sentence he could receive upon his guilty plea; indeed, counsel conceded that appellant knew the maximum possible sentence was eight years. Rather, counsel argued, the dispositive issue was that appellant's 11th-hour decision to forego a trial and enter a guilty plea was based on false information

provided by one of his trial attorneys, which rendered his plea unknowing, unintelligent, and involuntary. Counsel moved to admit the affidavits and transcript of the plea hearing that were attached to appellant's motion.

{¶ 20} Noting that neither party objected to the opposing party's exhibits, the trial court admitted all proffered exhibits.

{¶ 21} On January 20, 2023, the trial court issued an entry denying appellant's motion on grounds that appellant failed to demonstrate a manifest injustice warranting withdrawal of his guilty plea. The trial court first considered the factors relevant to assessing the credibility of the affidavits filed by appellant and his parents. In so doing, the trial court particularly noted that the instant motion was being reviewed by the same trial court judge who presided at the plea hearing, and that the affidavits were provided by persons with an interest in the success of the motion and contained hearsay statements. The court determined that such factors weighed against affording much weight to the affidavits. The trial court further averred that even if the affidavits were accepted as fact and appellant's trial attorney did provide erroneous information to appellant, such did not definitively establish ineffective assistance of counsel, as there was nothing in the record to indicate appellant's plea was not knowingly and voluntarily entered.

{¶ 22} Appellant did not file a timely notice of appeal to this court from the trial court's January 20, 2023 judgment. However, this court granted appellant's App.R. 5(A) motion for leave to file a delayed appeal and request for production of the plea and sentencing hearing transcripts at state expense. *State v. Sharifi*, 10th Dist. No. 23AP-217, (June 15, 2023) (memorandum decision).

## II. Assignments of Error

{¶ 23} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The trial abused its discretion when it denied Defendant's motion to withdraw guilty plea after a clear showing that a manifest injustice had occurred in in violation of Defendant's right to Due Process to the Fifth, Sixth and Fourteenth Amendments, Constitution of the United States; Article I, Section 10, Constitution of the State of Ohio.
>
> [II.] The trial abused its discretion when it denied Defendant's motion to withdraw guilty plea sufficient evidence was

> submitted in violation of Defendant's right to Due Process of Fifth and Fourteenth Amendments, Constitution of the United States; Article I, Section 10, Constitution of the State of Ohio.

(Sic passim.)

### III. Analysis

{¶ 24} Appellant's assignments of error are interrelated and thus will be considered together. In them, appellant contends the trial court erred by denying his post-sentence motion to withdraw his guilty plea upon a finding that no manifest injustice occurred.

{¶ 25} "Motions to withdraw guilty pleas are governed by Crim.R. 32.1, which provides that the motion 'may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.' " *State v. Spivakov*, 10th Dist. No. 13AP-32, 2013-Ohio-3343, ¶ 9, quoting Crim.R. 32.1. Here, the motion to withdraw was made after sentence; thus, the issue to be resolved is whether granting the motion is necessary to correct a manifest injustice. *Id.*

{¶ 26} "Manifest injustice relates to some fundamental flaw in the proceedings which results in a miscarriage of justice or is inconsistent with the demands of due process." *Id.* at ¶ 10, citing *State v. Williams*, 10th Dist. No. 03AP-1214, 2004-Ohio-6123, ¶ 5. "A showing of manifest injustice 'is an extremely high standard, which permits a defendant to withdraw his guilty plea only in extraordinary cases.' " *State v. Tabor*, 10th Dist. No. 08AP-1066, 2009-Ohio-2657, ¶ 6, quoting *State v. Price*, 4th Dist. No. 07CA47, 2008-Ohio-3583, ¶ 11. "A defendant seeking to withdraw a post-sentence guilty plea bears the burden of establishing a manifest injustice based on specific facts either contained in the record or supplied through affidavits attached to the motion." *Spivakov* at ¶ 10, citing *State v. Barrett*, 10th Dist. No. 11AP-375, 2011-Ohio-4986, ¶ 8.

{¶ 27} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph two of the syllabus. "An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard." *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, ¶ 15. "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that

of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 34, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 28} Appellant asserts his plea was not knowingly, voluntarily, and intelligently made due to ineffective assistance of counsel; thus, a manifest injustice occurred warranting withdrawal of his plea. "A guilty plea that was not entered knowingly, intelligently, or voluntarily, creates a manifest injustice that would entitle a defendant to withdraw a guilty plea." *Williams* at ¶ 5, citing *State v. Bush*, 3d Dist. No. 14-2000-44, 2002-Ohio-6146, ¶ 11; *Spivakov* at ¶ 13-14 (ineffective assistance of counsel may constitute manifest injustice requiring post-sentence withdrawal of a guilty plea where counsel's ineffectiveness affected the knowing and voluntary nature of the plea); *State v McMichael*, 10th Dist. No. 11AP-1042, 2012-Ohio-3166, ¶ 14 ("A guilty plea * * * waives the right to assert ineffective assistance of counsel unless the counsel's errors affected the knowing and voluntary nature of the plea.").

{¶ 29} Appellant claims his trial counsel's assertion at the plea hearing that he had "an idea," followed by a request to confer privately with appellant, evidenced "some deceptive intent on [behalf] of counsel to purposely mislead" him into pleading guilty and that such deception constituted ineffective assistance of counsel. (Appellant's Brief at 6.) Appellant maintains that "it appears that former defense [counsel] not only misinformed the Defendant of the sentence the Defendant would receive if found guilty at a trial but that former counsel purposely misinformed the Defendant of this information as a last-ditch effort to persuade the Defendant from going to trial." (Appellant's Brief at 6.) Appellant revisits this theme in his reply brief, stating: "when [trial] counsel used the words * * * '*I have an idea*,' while addressing the trial court, it appears that something more nefarious was at play." (Emphasis sic.) (Appellant's Reply Brief at 3.) Appellant suggests that trial counsel's "*I have an idea*" statement signaled to the trial court, "I know how to resolve this matter quickly without it going to trial." (Emphasis sic.) (Appellant's Reply Brief at 3.) Appellant argues his trial counsel knew that it was legally impossible for him to be sentenced to 13 years imprisonment. Accordingly, argues appellant, it was objectively below the standard of reasonable professional assistance for trial counsel to purposely misinform him about a possible sentencing outcome, and that "[t]here is no feasible way such a deceptive intent [can] be construed as a reasonable strategic decision, as a defendant

cannot logically weigh the decision to go to trial or accept a plea without knowing the reality of the sentence he could face following an unsuccessful trial outcome." (Appellant's Brief at 7.)

{¶ 30} Appellant further maintains that but for trial counsel's deception, he would not have entered a guilty plea. Appellant notes that prior to his private conversation with trial counsel outside the courtroom, he had insisted on going to trial and the plea deal he accepted was the same one he had previously rejected. Appellant maintains that "[t]his sudden change in heart for seemingly no identifiable reason following trial counsel's 'idea' " corroborates the averments he and his parents made in the affidavits regarding trial counsel's assertions that if the jury returned a guilty verdict, he would receive a 13-year prison term. (Appellant's Brief at 7.)

{¶ 31} Appellant also challenges the trial court's finding that the affidavits submitted by appellant and his parents were not entitled to much weight. Appellant argues that under the facts of the case, i.e., he was prepared to go to trial until trial counsel deceptively dissuaded him from doing so, the trial court should have afforded much more weight to the affidavits. In addition, appellant challenges the trial court's finding that his plea was entered knowingly, voluntarily, and intelligently because the record established he was aware of the consequences of the plea at the time he entered it. Appellant maintains the issue was never what he knew after deciding to accept the plea, i.e., that the maximum penalty for the charge to which he was pleading guilty was eight years. Rather, the issue is whether he could have knowingly, voluntarily, and intelligently entered into a plea that was based on the misinformation trial counsel imparted to him during their private conversation which ultimately induced him into accepting the plea deal.

{¶ 32} "A defendant seeking to withdraw a guilty plea based on ineffective assistance of counsel must show first that counsel's performance was deficient, and second that there is a reasonable probability that, but for counsel's errors, the defendant would not have agreed to plead guilty." *State v. Smith*, 10th Dist. No. 08AP-420, 2008-Ohio-6520, ¶ 15, citing *State v. Xie*, 62 Ohio St.3d 521 (1992); *Strickland v. Washington*, 466 U.S. 668 (1984). "A defendant must satisfy both prongs of *Strickland* to demonstrate ineffective assistance of counsel; a failure to make one showing or another defeats the claim." *State v. Montgomery*, 10th Dist. No. 19AP-41, 2020-Ohio-5594, ¶ 161.

{¶ 33} Appellant's claim fails because he did not meet his burden of demonstrating a manifest injustice due to ineffective assistance of counsel causing him to not enter his plea knowingly, voluntarily, and intelligently. First, appellant has not demonstrated that his counsel was deficient. Appellant asserts that trial counsel's conduct in intentionally misinforming him about the sentence that would be imposed upon a guilty verdict in order to dissuade him from going to trial fell below the standard of reasonable professional assistance. Appellant's assertion is based exclusively on the private, off-the-record discussion he had with trial counsel immediately preceding entry of his guilty plea. In support of his claim, appellant relies on the affidavit testimony provided by him and his parents.

{¶ 34} In *State v. Little*, 10th Dist. No. 21AP-272, 2022-Ohio-1295, this court observed that:

> [I]n assessing the credibility of affidavit testimony, the trial court 'should consider all relevant factors,' including whether: (1) the same judge who reviewed the petition also had presided at trial; (2) multiple affidavits 'contain nearly identical language, or otherwise appear to have been drafted by the same person'; (3) the affidavit relies on hearsay; (4) the affiant is a relative of the petitioner 'or otherwise interested in the success of the petitioner's efforts'; and (5) the affidavit contradicts 'the evidence proffered by the defense at trial.'

*Id.* at ¶ 20, quoting *State v. Calhoun*, 86 Ohio St.3d 279, 285 (1999).[1] When a trial court discounts the credibility of sworn affidavits, the court "should include an explanation of its basis for doing so in order to permit meaningful review." (Internal quotations and citations omitted.) *Id.* at ¶ 19.

{¶ 35} Here, the trial court explained its reasons for discounting the credibility of the affidavit testimony provided by appellant and his parents. The court first noted that the judge reviewing the motion to withdraw the guilty plea also presided at appellant's plea hearing. "As such, the judge was familiar with the underlying proceedings and was in the best position to observe appellant and judge his credibility." *State v. Silverman*, 10th Dist. No. 06AP-1278, 2007-Ohio-6498, ¶ 26. The court also noted that all three affidavits were

---

[1] In *Little*, we noted that " '[a]lthough *Calhoun* involved a petition for postconviction relief, other appellate courts have applied it in the context of motions to withdraw pleas under Crim.R. 32.1.' " *Id.* at ¶ 19, quoting *State v. Yahya*, 10th Dist. No. 10AP-1190, 2011-Ohio-6090, ¶ 8, fn. 2.

authored by persons interested in undermining appellant's guilty plea. " 'Ohio courts have consistently held that affidavits from interested parties such as defendants, co-defendants, and family members are self-serving and may be discounted.' " *State v. Miller*, 12th Dist. No. CA2016-01-007, 2016-Ohio-7360, ¶ 14, quoting *State v. Robinson*, 12th Dist. No. CA2013-05-085, 2013-Ohio-5672, ¶ 17. The trial court also correctly noted that the affidavit testimony of appellant's parents contained and relied on hearsay, as it was based on statements allegedly made by appellant's trial counsel. *Silverman* at ¶ 26. Further, although not specifically mentioned by the trial court, the affidavits submitted by appellant's parents contained identical language. Further undermining the credibility of appellant's parents' affidavit testimony is the fact that neither parent testified at the hearing on appellant's motion to withdraw his guilty plea. We thus conclude the trial court acted within its discretion in determining that the affidavit testimony of appellant and his parents lacked credibility.

{¶ 36} We also find the trial court did not err in determining that even if the affidavits were accepted as fact and appellant's trial attorney did provide erroneous information to appellant, nothing in the record indicated that appellant's plea was not knowingly and voluntarily entered. The record of the plea hearing plainly refutes any claim of reasonable reliance on the erroneous representation concerning appellant's maximum sentence. The trial court informed appellant the maximum sentence the court could impose for the offense to which appellant was pleading guilty was eight years. Appellant stated that he understood that eight years was the maximum sentence that could be imposed. Further, when provided the opportunity to express concerns about his trial counsel's alleged misrepresentation about the sentence, appellant averred he was satisfied with his representation. He further stated he read and understood the guilty plea form, which indicated that no person coerced or induced him into pleading guilty and that he was completely satisfied with the legal representation and advice he received from his trial counsel. Appellant further stated his guilty plea was entered freely and voluntarily. A trial court does not abuse its discretion by refusing to permit a defendant to withdraw his guilty plea when the defendant's bare allegations of coercion are contradicted by his own statements to the trial court. *State v. Moncrief*, 10th Dist. No. 08AP-153, 2008-Ohio-4594, ¶ 14, citing *State v. Patterson*, 5th Dist. No. 2003CA00135, 2004-Ohio-1569, ¶ 20 (holding

that self-serving affidavit asserting coercion which contradicted plea form indicating no coercion was insufficient to show manifest injustice). Although appellant testified at the hearing on the motion to withdraw his guilty plea that he did not recall reading the guilty plea form, the trial court did not mention that testimony, or any of appellant's testimony, in its decision. We discern no error in the trial court's omission because, as noted above, the trial judge was familiar with the underlying proceedings and was in the best position to observe appellant and assesses his credibility as to his contradictory testimony regarding the guilty plea form.

{¶ 37} Because appellant failed to set forth sufficient facts showing his trial counsel was deficient or that the alleged deficient performance prejudiced him, he failed to demonstrate a manifest injustice based on the claim that his plea was not made knowingly, voluntarily, and intelligently due to ineffective assistance of counsel. We thus conclude the trial court acted within its discretion in denying appellant's motion to withdraw his guilty plea. As a result, appellant's first and second assignments of error lack merit and are overruled.

## IV. Conclusion

{¶ 38} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and LELAND, JJ., concur.

————————————